OPINION
Ronald Will is appealing the judgment of the Montgomery County Common Pleas Court, convicting him of felonious assault and domestic violence with a prior conviction.
On August 26, 2000, two police officers were sent to an apartment building on the report of a female being beaten by her live-in boyfriend. Both officers found Ms. Kennedy waiting for them in the landlord's apartment on the first floor of the building. Ms. Kennedy informed the officers that she had been beaten by her boyfriend who was still upstairs in their apartment. The officers observed bruising underneath Ms. Kennedy's eyes, blood crusted on the corners of her mouth, and swelling to her nose.
When the officers went to the apartment upstairs, they found no one in the apartment. Other witnesses identified Mr. Will as Ms. Kennedy's live-in boyfriend. Additionally, when Mr. Will was later questioned by the police, he admitted that he and Ms. Kennedy were living together. Also, the State offered evidence that Mr. Will had a prior conviction for domestic violence from July of 2000.
On September 12, 2000, Ms. Kennedy and Mr. Will went out drinking with Michael Colley, who was a neighbor in the new apartment building into which they had moved. The trio went to two different bars and at the second bar, Ms. Kennedy said something to Mr. Colley which led him to believe there might be trouble, so Mr. Colley left alone for home.
Before long, Mr. Colley heard a knock on the door and when he opened it, found Ms. Kennedy. Ms. Kennedy's face and clothing were covered in blood and mud, and her eyes were blackened. Ms. Kennedy was hunched over in pain. When Mr. Colley asked what had happened to her, she stated, "Ronnie beat me up." Mr. Colley allowed Ms. Kennedy into his apartment and helped her clean up. After a period of time, Mr. Colley called 911.
Officer Marcum arrived first and found Ms. Kennedy lying on Mr. Colley's bed. Ms. Kennedy was covered in blood and her arms and face were very swollen. In fact, Ms. Kennedy's face was swollen so severely that her eyes could not open. Additionally, Ms. Kennedy was moaning in pain and her clothes were blood and grass stained. When asked, Ms. Kennedy told Officer Marcum that she had been hit and kicked by her boyfriend.
Officer Marcum, along with other police officers, proceeded across the hall to Ms. Kennedy and Mr. Will's apartment to attempt to find Mr. Will. After failing to obtain an answer at the door, the officers were finally able to gain entry into the apartment. The officers called out for Mr. Will but received no answer. The officers located Mr. Will passed out on the bathroom floor. Mr. Will's pants were grass stained and had blood on them, and he was not wearing a shirt. One of the officers observed dried blood on his hands. Mr. Will was arrested and transported to the Kettering City Jail, where his pants were collected as evidence. A subsequent DNA analysis of Mr. Will's pants revealed that blood found on the belt loop was consistent with that of Ms. Kennedy. Additionally, the officers recovered a pink blouse found at Mr. Will and Ms. Kennedy's apartment which contained blood stains on the front and back of the shirt consistent with Ms. Kennedy. Additionally, at least one officer testified that the blouse appeared to have dirt stains and grass attached to it. (Tr. 116).
Paramedics arrived at Mr. Colley's apartment and treated Ms. Kennedy for her injuries. When a paramedic asked Ms. Kennedy how she was injured, she responded that her boyfriend had hit and kicked her. Also, at the hospital, Ms. Kennedy informed the doctor treating her that she had been beaten by her boyfriend. Ms. Kennedy was found to have left facial trauma, a left pneumothorax or collapsed lung, and a probable broken rib. Ms. Kennedy, who was suffering severe pain, was observed at the hospital for 23 hours and released.
On September 15, 2000, Ms. Kennedy was found unconscious in her apartment and was again taken to the hospital. Ms. Kennedy was diagnosed with a subdural hematoma, which is bleeding in the brain, and remained in a coma for several weeks.
Mr. Will was subsequently indicted by the Montgomery County Grand Jury on one count of domestic violence in violation of R.C. 2919.25(A) and one count of felonious assault in violation of R.C. 2903.11(A)(1) on September 27, 2000. On October 3, 2000, Mr. Will entered a plea of not guilty. Appointed counsel withdrew, which caused Mr. Will to seek a continuance from October 31, 2000 to November 2, 2000. On November 7, 2000, the State filed a motion for continuance. Mr. Will filed a motion to dismiss on statutory speedy trial grounds on February 2, 2001, which was overruled. Mr. Will's bench trial began on February 5, 2001 and the trial court found him guilty as charged. Mr. Will was sentenced to concurrent prison terms of twelve months on count one and seven years on count two. Mr. Will has filed this appeal from the verdict.
Mr. Will raises the following three assignments of error:
 "1. THE TRIAL COURT ERRED IN DECLINING TO HEAR TESTIMONY REGARDING A SEXUAL ASSAULT KIT AND THE PRESENCE OF SEMEN, AS WELL AS DECLINING TO REVIEW AND CONSIDER THE STIPULATED EXHIBIT NO. 15, THE COMPLAINANT'S MEDICAL RECORDS.
 "2. THE TRIAL COURT ERRED IN PRECLUDING DEFENSE COUNSEL FROM CROSS-EXAMINING THE POLICE WITNESSES REGARDING THEIR KNOWLEDGE OF COMPLAINANT'S RECORD OF CRIMINAL CONVICTIONS, WHICH INFORMATION COULD IMPEACH COMPLAINANT'S VERACITY AS A REPORT OF INFORMATION, IN VIOLATION OF THE CONFRONTATION CLAUSES OF BOTH THE OHIO AND UNITED STATES CONSTITUTIONS.
 "3. THE COURT ERRED IN FAILING TO DISMISS THE MATTER HEREIN ON SPEEDY TRIAL GROUNDS."
Appellant's first assignment of error:
 Mr. Will argues that the trial court erred in preventing testimony at the trial regarding Ms. Kennedy's injuries sustained on September 15, 2000 and evidence collected regarding those injuries. We disagree.
Issues surrounding the admission of evidence fall within the sound discretion of the trial court, and therefore, the trial court's decision in this area should not be disturbed on appeal absent an abuse of discretion. State v. Issa, 93 Ohio St.3d 49, 64, 2001-Ohio-1290, citingState v. Maurer (1984), 15 Ohio St.3d 239, 265. One can generally admit all evidence that is relevant, which is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401 402.
Mr. Will argues the trial court erred in declining to hear testimony regarding a sexual assault kit, which showed the presence of semen, performed on Ms. Kennedy two days after Mr. Will was in jail and declining to review and consider Ms. Kennedy's medical records pertaining to injuries suffered after Mr. Will was in jail. The incidents underlying Mr. Will's convictions occurred on August 26, 2000 and September 13, 2000. Mr. Will was arrested on September 13, 2000 and remained incarcerated until his trial in February of 2001. On September 15, 2000, Ms. Kennedy was found unconscious and taken to the emergency room. Ms. Kennedy was diagnosed with a head injury amounting to bleeding on the brain and remained in a coma for a period of time. On September 13, 2000, the medical records showed no sign of Ms. Kennedy having this head injury. No evidence was offered regarding how Ms. Kennedy's injuries were sustained on September 15, 2000. When Ms. Kennedy was hospitalized on September 15, 2000 a sexual assault kit was performed which revealed the presence of semen. This semen was shown to appear nearly twice as often among the Hispanic population as among the Caucasian population.
Mr. Will argued at trial that the September 15, 2000 injuries were relevant and that testimony and medical records pertaining to them should be considered by the trial court. Mr. Will argued that Ms. Kennedy may have been assaulted on September 15, 2000 and that he would argue that whoever assaulted her on September 15, 2000 may have also assaulted her on September 13, 2000. Mr. Will's defense at trial was not that Ms. Kennedy had not been assaulted but that he was not the person who assaulted her. Mr. Will points to various weaknesses in the State's case to bolster his position that the September 15, 2000 incident should have been explored at trial. The State responds by reiterating the evidence presented at trial demonstrating that Ms. Kennedy and the physical evidence identified Mr. Will as her attacker.
At trial, Mr. Will could offer no evidence that Ms. Kennedy was assaulted by another person on September 15, 2000. From the record, it appears that Ms. Kennedy was found unconscious and then fell into a coma for some period of time. Additionally, it appears that even upon coming out of the coma she was unable to communicate what had happened to her on September 15, 2000. Therefore, Ms. Kennedy was not able to state if she had been assaulted by someone else. Moreover, Ms. Kennedy suffered from seizures and there was no evidence that this may have caused her September 15, 2000 injuries. Based on the record, the manner in which Ms. Kennedy was injured on September 15, 2000 remains a mystery. As there was no evidence that Ms. Kennedy's injuries on September 15, 2000 were from an assault or that the incident was related to Ms. Kennedy's assault on September 13, 2000, we cannot say that the trial court abused its discretion by excluding evidence on the September 15, 2000 incident as irrelevant. The first assignment of error is without merit and overruled.
Appellant's second assignment of error:
 Mr. Will argues that the trial court erred in not permitting him to elicit testimony regarding Ms. Kennedy's prior convictions from witnesses other than Ms. Kennedy. We disagree.
A defendant's right of confrontation is not violated by a hearsay statement's admission into evidence pursuant to a hearsay exception.State v. Dever, 64 Ohio St.3d 401, 1992-Ohio-41, at paragraph three of the syllabus; State v. Stapleton (June 22, 1994), Montgomery App. No. 13579. The hearsay rule does not exclude excited utterances and statements for the purpose of medical diagnosis and treatment even though the declarant is available as a witness. Evid. R. 803 (2) (4).
In the instant case, several hearsay statements were admitted by the trial court pursuant to the excited utterances and statements for the purpose of medical diagnosis exceptions to the hearsay rule. These statements were those of Ms. Kennedy stating that Mr. Will, her boyfriend, had beaten her and caused her injuries. On appeal, Mr. Will does not challenge the propriety of admitting those statements pursuant to the hearsay exception. Rather, Mr. Will argues that he should have been permitted to elicit testimony from other witnesses about Ms. Kennedy's criminal history even though she did not testify. Mr. Will argues in his brief that "in order to utilize the hearsay statements of the complainant, as the prosecution did herein, it must prove that the complainant was unavailable." (Appellant's brief p. 8). However, Evidence Rule 803 which encompasses the excited utterance and statements for the purpose of medical diagnosis exceptions to the hearsay rule, which the State used to admit Ms. Kennedy's statements, does not require a showing of unavailability. Thus, the State did not err in failing to prove that Ms. Kennedy is unavailable.
Mr. Will argues that the trial court's refusal to permit him to elicit testimony regarding Ms. Kennedy's prior criminal record and prior recantations of assault allegations against Mr. Will and other males in the past violated his right to cross-examination. However, the Ohio Supreme Court clearly stated in Dever that a defendant's right to confrontation is not violated by the admission of hearsay statements pursuant to a hearsay exception. Additionally, Evidence Rule 609, 607, and 608 only permit evidence of prior convictions to attack the credibility of a witness at trial. Since Ms. Kennedy was not a witness at trial, Mr. Will had no grounds to attack her credibility. Therefore, we cannot find that the trial court erred in preventing Mr. Will from eliciting testimony on Ms. Kennedy's prior convictions and recantations from other witnesses. The second assignment of error is without merit and is overruled.
Appellant's third assignment of error:
 Mr. Will argues that the trial court erred in failing to dismiss the charges against him when he asserted that his right to a speedy trial was violated. We disagree.
R.C. 2945.71(C)(2) provides that "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest." Additionally, the statute provides that in calculating the 270 days, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). However, this triple count provision provided in R.C. 2945.71(E) has been held to only apply to defendants held in jail in lieu of bail solely on the pending charge.State v. Brown, 64 Ohio St.3d 476, 479, 1992-Ohio-96; State v. McDonald
(1976), 48 Ohio St.2d 66, paragraph one of the syllabus.
A judgment entry should contain: "[1] the case caption and number; [2] a designation as a decision or judgment entry or both; [3] a clear pronouncement of the court's judgment, including the plea, the verdict or findings, sentence, and the court's rationale if the entry is combined with a decision or opinion; [4] the judge's signature; and [5] a time stamp indicating filing of the judgment with the clerk for journalization." State v. Ginoccio (1987), 38 Ohio App.3d 105. Also, Superintendence Rule 7 requires that a judgment of conviction entry "be filed and journalized within thirty days of the verdict, decree, or decision." Sup. R. 7.
Mr. Will argues that he was held in jail in lieu of bail from September 13, 2000 until February 5, 2001, when his trial occurred. Although Mr. Will admits that fourteen days of this period of time in jail was due to his motion for a continuance, he asserts that he was still held in jail in excess of 90 days. The State asserts that Mr. Will was held in jail from September 13, 2000 until October 8, 2000, in lieu of bail solely on the pending charges and therefore for those 25 days the triple count provision applies and 75 days were attributable to the State for speedy trial purposes during this period. However, the State asserts that beginning on October 8, 2000, Mr. Will was serving a jail sentence pursuant to Dayton Municipal Court Case No. 00-CRB-7926 and the triple count provision ceased to apply because he was no longer being held in jail in lieu of bond solely on the pending charges. Thus, the State asserts that from November 2, 2000 until the trial on February 5, 2001, only 95 additional days were attributable to the State for speedy trial purposes. According to the State the total number of days Mr. Will was held in jail attributable to the State for speedy trial purposes is 180 days, and thus Mr. Will was not held in jail in lieu of bond in excess of 270 days.
However, Mr. Will asserts that the triple count provision in R.C.2945.71(E) should apply to the entire time he was in jail because the sentence he served in the municipal case was not pursuant to a valid judgment entry. Mr. Will appears to argue that the judgment entry was not valid because it was not time stamped by the clerk for journalization. We have reviewed the judgment entry attached to the trial court's decision on this issue and found that the municipal court judgment entry meets all of the requirements for a valid judgment entry including a time stamp from the clerk. As the State presented a valid judgment entry demonstrating that Mr. Will was not held in jail in lieu of bail solely on the pending charge, we agree with the trial court that the triple count provision did not apply to the period of time Mr. Will was jailed on the municipal court case and his right to a speedy trial was not violated. The third assignment of error is without merit and is overruled.
The judgment of the trial court is affirmed.
WOLFF, P.J. and GRADY, J., concur.